**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Jernigan, ) | No. CV 03-1578-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Dr. Gale Steinhauser; Lee Holliday, ) | |
| Defendants. ) | |

    Before the court are Defendant Holliday's Motion For Summary Judgment (doc. # 102), Statement Of Undisputed Material Facts In Support Of Defendant Holliday's Motion For Summary Judgment (doc. # 103) ("HSOF"), and Reply In Support Of Defendant Holliday's Motion For Summary Judgment (doc. # 120), defendant Steinhauser's Motion For Summary Judgment (doc. # 104) and Statement Of Facts In Support Of Defendant Dr. Gale Steinhauser's Motion For Summary Judgment (doc. # 105), and Plaintiff's Response In Opposition To The Defendant's Motion For Summary Judgment/ Attorney Generals Office (doc. # 108), Plaintiff's Response In Opposition To The Defendant's Motion For Summary Judgment/ County Attorney's Office (doc. # 110), Statement Of Facts In Support Of Plaintiffs Response To Motion For Summary Judgment (doc. # 112), and Statement Of Facts In Support Of Plaintiff's Response To Motion For Summary Judgment By Lee Holliday (doc. # 118).

1  Plaintiff Steve Jernigan is an inmate incarcerated with the Arizona Department of
2 Corrections. Jernigan has sued Dr. Gale Steinhauser and Nurse Practitioner Lee Holliday in
3 both their official and personal capacities, alleging violations of his Eighth and Fourteenth
4 Amendment rights for their roles in delaying and denying him surgery on his hydrocele. A
5 hydrocele is a collection of fluid in the scrotum which is often, as was the case for Jernigan,
6 a complication that arises after a patient undergoes surgery to correct an inguinal hernia.
7 Because Jernigan has obtained the surgery removing the hydrocele, the only portion of
8 Jernigan's complaint that remains are his claims for punitive and compensatory damages
9 relating to his pain and suffering and the alleged loss of testicle suffered as a result of the
10 lateness of his operation.

**I.     Claims Against Lee Holliday**

During the relevant fifty-day period that Jernigan was an inmate at ASPC-Eyman/SMUII, Holliday responded to two Health Needs Requests submitted by Jernigan requesting surgery, the first on October 22, 2003 and the second on November 12, 2003. Before responding to the first request, Holliday reviewed Jernigan's chart and a September 4, 2003 testicular ultrasound in Jernigan's file, which showed that the testicles were within normal limits and contained no "evidence of intratesticular mass lesion." Based on this review and her professional experience, Holliday concluded that referral for surgery was not medically-warranted and instructed Jernigan that his testicles were normal and that the procedure requested was "elective." In response to the second Health Needs Request, Holliday ordered that Jernigan be measured for an athletic supporter to take the pressure off the hydrocele, that Jernigan be issued Tylenol for the pain, and that the hydrocele be measured so it could be monitored. The only other interaction Holliday had with Jernigan was on November 24, 2003, when she assisted another nurse in measuring Jernigan's hydrocele.

The court holds that defendant Lee Holliday is entitled to summary judgment for the following reasons:

1    A.   The evidence presented shows at most a difference of medical opinion; Jernigan was displeased with Holliday's conclusion that surgery was not required. Whether Jernigan required surgery is a question of medical judgment. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (holding that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and that failure to order such measures will not "represent cruel and unusual punishment"). The arguably hearsay evidence submitted by Jernigan that other attendants or doctors later told him he needed a surgery could at best support a finding of difference of medical opinion on the matter, which the Supreme Court has explicitly stated will not constitute an Eighth Amendment violation. *Id.*

Where, as here, alternative courses of treatment are available, the plaintiff is required to "show that the course of treatment the doctors chose was medically unacceptable under the circumstances," *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Jernigan points to no evidence suggesting Holliday's prescribed treatment of his hydrocele was medically unacceptable.

B.   Even if Holliday's medical judgment was very poor, and Jernigan is correct that the decision led to the loss of his testicle, Jernigan cannot show an Eighth Amendment violation. Medical malpractice cases are properly brought under state tort law, not under the Eighth Amendment. *See Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."); *Estelle*, 429 U.S. at 107 ("At most it is medical malpractice, and as such the proper forum is the state court . . . .").

C.   Jernigan does not present evidence sufficient to allow a jury to conclude Holliday had the subjective state of mind necessary to constitute deliberate indifference. An official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Jernigan does not show that Holliday was aware of facts creating an excessive

- 3 -

1  risk to Jernigan's health or safety.  Holliday looked to Jernigan's testicular ultrasound in
2  concluding that Jernigan did not need surgery; the report of the ultrasound clearly indicated
3  that Jernigan's testicles were normal except for the hydrocele.  No evidence is presented that
4  suggests a hydrocele was or is an "excessively risky" condition, let alone that non-surgical
5  care of a hydrocele is "medically unacceptable."  *Jackson*, 90 F.3d at 332.

6        D.  Jernigan's complaint does not include any allegation that Holliday denied his
7  request for pain medication.  The complaint only alleges that defendants violated his rights
8  by denying him an operation, Complaint (doc. # 45) at 4-5, an operation that Jernigan has
9  since been provided.  Jernigan's claim that Holliday improperly refused to provide him pain
10 medication is thus not properly before the court, *see Coleman v. Quaker Oats Co.*, 232 F3d
11 1271, 1292 (9th Cir. 2000) ("[Plaintiff never asserted this claim prior to his opposition to
12 Boeing's motion for summary judgment, nor has he moved to amend his complaint to add
13 such a claim.  Thus, this claim is not properly before the court.")(citing *Klein v. Boeing Co.*,
14 847 F. Supp. 838, 844 (W.D. Wash 1994)), and is also contraindicated by the evidence. *See*
15 HSOF at Doc 70A 11/13/03 entry; Aff. of Lee Holliday at ¶ 9.

16       E.  The Eleventh Amendment prohibits suits against state officials in their official
17 capacity for damages.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

18 **II.  Claims Against Dr. Gale Steinhauser**

19       Dr. Gale Steinhauser was the Medical Director of Correctional Health Services, which
20 provides medical services to inmates incarcerated at the Madison Street Jail in Phoenix,
21 Arizona. Jernigan was incarcerated in the Madison Street Jail from May 15, 2003 to October
22 of 2003.  The only interaction Dr. Steinhauser had with Jernigan was when she formally
23 denied one of Jernigan's requests for surgery on September 19, 2003.  On the denial form,
24 Dr. Steinhauser explained that the requested surgery was "[e]lective surgery for a benign
25 condition,"  (doc. # 110 Ex. 7) and that the request would be revisited after two to three
26 months of monitoring the clinical status of the patient.  Dr. Steinhauser never provided any
27 hands-on care to Jernigan.

28

1   The court finds that Dr. Steinhauser is entitled to summary judgment on Jernigan's claims for the following reasons:

A. The evidence presented shows at most a difference of medical opinion, which does not support an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Even if Jernigan provided non-hearsay evidence that other doctors believed surgery was necessary, differences in doctors' perceptions as to the necessity of surgery do not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 241 (9th Cir. 1989) (holding that even though one prison doctor had advised Sanchez that surgery was necessary, the fact that Sanchez received substantial non-surgical medical care for his abscesses precluded a finding of deliberate indifference, and thus allowed for a grant of summary judgment against Sanchez).

B. Even if the decision to deny Jernigan an operation was "malpractice," as he claims it was, the suit is not properly brought under the Eighth Amendment. The Eighth Amendment does not prohibit medical malpractice or even gross negligence. *See Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990).

C. Jernigan cannot show the requisite mental state for an Eighth Amendment violation; Jernigan does not present evidence suggesting Steinhauser was aware of any substantial risk to the health or safety of Jernigan. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Steinhauser made her decision to deny Jernigan's surgery on the basis of the September 4, 2003 ultrasound and the Maricopa Medical Center surgery report, which indicated that the hydrocele was benign.

## III.   Qualified Immunity

Although only argued by Holliday, the doctrine of qualified immunity provides an additional basis for granting both defendants' motions for summary judgment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court has little trouble holding that any right

1 even arguably violated by either defendant was not part of the "clearly established" law at
2 that time. *Id.*
3     IT IS THEREFORE ORDERED that Defendant Holliday's Motion for Summary
4 Judgment (doc. # 102) is granted.
5     IT IS FURTHER ORDERED that defendant Dr. Gale Steinhauser's Motion For
6 Summary Judgment (doc. # 104) is granted.
7     IT IS FURTHER ORDERED that the clerk shall enter judgment in favor of all
8 defendants and that the plaintiff take nothing. The clerk shall terminate this action.
9     DATED this 6th day of October, 2005.

_____
Neil V. Wake
United States District Judge